[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
This matter comes before the court as a limited dissolution of a marriage between the parties which occurred on September 15, 1981 in Lebanon, New Jersey. Immediately prior to the commencement of the dissolution trial, a hearing was conducted on the plaintiff's motion in limine regarding an ante-nuptial agreement between the parties dated September 14, 1981. At the conclusion of this hearing, the court orally granted the motion finding the agreement to be invalid and unenforceable due to the lack of full and complete financial disclosure. Subsequent to that ruling, and prior to the commencement of the dissolution trial, both parties and counsel orally stipulated that the evidence presented at the motion in limine hearing could be considered by this court as evidence in the dissolution trial.
The plaintiff's maiden name is Carol E. Unglaub. Her name at the time of this marriage was Carol E. Wermuth. The plaintiff resided continuously in this state for at least twelve (12) months prior to the filing of this action. No children were born to the wife since the date of this marriage. Neither the State of Connecticut nor any municipality has contributed to the support of either party.
This union was a second marriage for the wife and a third for the husband. The wife, fifty-six (56) years of age, was forty-two (42) at the time of the marriage. The husband, who was fifty-three (53) at the time of the marriage, is now sixty-seven (67) years of age.
The husband, who was employed at Union Carbide, retired in 1985 after thirty-three (33) years with the company. At the time of the marriage, the husband's assets consisted of approximately $1000 in checking; $1000 in savings; $12,000 in municipal bonds; equity of $106,000 in his home; $80,000 in Union Carbide savings and/or retirement accounts; life insurance cash value of $22,000; an automobile valued at $6000; and his interest in the Union Carbide pension.
The wife's assets at the time of the marriage consisted of CT Page 620 equity in her home of approximately $100,000 to $110,000; a Volkswagen van; bank account(s) worth something less than $2000; and a possible interest in a pension/retirement plan at her then place of employment, where she had worked for five years before the marriage. Any claims that the wife may have had to additional back alimony and/or property division by virtue of her prior marriage and dissolution were never determined by a court of competent jurisdiction.
At the time of the marriage, the wife's income consisted of approximately $15,000 from her employment, and $1000 per month in alimony from her prior spouse. The husband's annual salary from Union Carbide was approximately $65,000 at that time.
The wife has an associate's degree. During the marriage she worked essentially full-time at various part-time positions with Union Carbide. At the time of the trial, she had relocated to New Jersey where she was residing with her daughter and was employed in a temporary position earning gross wages of approximately $500 per week. She was in the process of seeking more permanent employment.
The husband's income consists primarily of his pension from Union Carbide which provides gross weekly payments of approximately $590, social security payments of $253 per week; and interest and dividend income of approximately $145 per week, as reflected on his financial affidavit. Additionally, he has $12,000 to $15,000 annual income from his pension and retirement plans which are reflected in section (g) of the assets on his financial affidavit. The husband is entitled to receive this income but has not chosen to do so, reinvesting the income instead.
The husband's total assets now are approximately $838,000. The wife's total assets now, including one-half of the value of the condominium in North Carolina, are $102,308. In this regard, the court notes that the wife sold her previously owned real estate to one of her daughters for somewhat less than market value and during the marriage gifted $30,000 to each of her two daughters. The court is also cognizant of the fact that a loan to one of the husband's daughters was forgiven by the husband in the approximate amount of $20,000. Also of relevance is the fact that Prudential account of approximately $142,000 is comprised of funds acquired by way of inheritance and premarital assets. CT Page 621
The court has considered all of the criteria of §§ 46b-81
and 46b-82 of the General Statutes, all of the evidence and case law, and based upon the foregoing, the court enters the following orders:
A. A decree of dissolution shall enter on the grounds of irretrievable breakdown.
B. The defendant shall, during his lifetime, pay to the plaintiff, until her death or remarriage, the sum of $1000 per month as alimony, commencing February 1, 1996, for a period of seven years.
C. The defendant shall designate and maintain the plaintiff as the beneficiary of $100,000 of life insurance.
D. The defendant shall pay to the wife, by way of lump sum property settlement, the sum of $175,000 as follows:
1. $25,000 on or before March 15, 1996.
2. $25,000 on or before April 15, 1996.
3. $25,000 on or before June 15, 1996.
 The above payments shall be made in cash or the transfer of readily liquid funds.
 4. The $100,000 balance shall be due and payable within sixty (60) days of the date of this decision and, at the defendant's election, this payment may be made in readily liquid funds or by the transfer to the plaintiff of that amount of his retirement account(s) by way of a qualified domestic relations order. The court will retain jurisdiction of this matter until the lump sum property settlement is fully effectuated.
E. The plaintiff shall transfer to the defendant all of her right, title and interest in the North Carolina condominium upon receipt of the full property settlement amount as stated above.
F. Except as provided in this decision, all other assets of either party shall become and remain the property of such party CT Page 622 as reflected on his or her financial affidavit.
G. Each party shall be responsible for his or her respective counsel fees, and any liabilities reflected on his or her financial affidavit.
Dennis, J.